IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

REGINALD L. DUNAHUE
ADC #106911                                                                                      PLAINTIFF

V.                          CASE NO. 5:15-CV-276-BSM-BD

RANDY WATSON, et al.                                                                        DEFENDANTS

## RECOMMENDED DISPOSITION

**I.**   **Procedure for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Chief Judge Brian S. Miller. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection. Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.**   **Background**

Reginald L. Dunahue, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. He claims that the Defendants violated his first amendment rights by denying him access to the news. (Docket entries #2, #6) He seeks monetary damages, as well as prospective injunctive relief.

Defendants have moved for summary judgment on all claims, contending that they are entitled to both sovereign and qualified immunity, and that Mr. Dunahue's requests for injunctive relief are now moot. (#42) Mr. Dunahue has responded to the motion, and it is ripe for decision. (#46)

## III. Discussion

### A. Standard

Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no real dispute about the facts that are important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). As moving parties, the Defendants bear the burden of producing admissible evidence showing that there is no real dispute. If they offer such evidence, Mr. Dunahue is obligated to meet evidence with evidence if he is to avoid summary judgment.

### B. Factual History

At all times relevant to this lawsuit, Mr. Dunahue was assigned to the Varner Supermax Unit ("VSM") of the ADC and was housed in punitive isolation. (#42-1 at p.2) ADC inmates found guilty of disciplinary infractions may be sentenced to punitive isolation for 30-day terms. (*Id*. at p.4; #42-5 at p.7) Inmates serving consecutive 30-day sentences are provided 48-hour relief after each 30-day sentence. (*Id*.) During those 48 hours, certain inmate privileges, including the right to receive newspapers and magazines, are restored. (*Id*.; #42-5 at p.2) Other than the 48-hour relief period, however, ADC

inmates housed in punitive isolation are not allowed to receive newspapers or magazines, and they have no access to television or radio broadcasts. (*Id.*)

Here, Mr. Dunahue does not challenge that ADC policy, but rather specifically requests that the Court order the Defendants to repair the outdoor radio system at the VSM; to provide him access to the outdoor radio system at the VSM; to provide him access to the media; and to allow him to buy and possess a radio, as well as batteries and speakers, while he is housed in isolation and on his 48-hour relief.

It is undisputed that until 2013, the VSM operated an outdoor radio system that played music and news. (*Id.* at p.5) At some point, Mr. Dunahue learned that ADC officials would not repair the outdoor radio system at the VSM after it was struck by lightning. (#42-7 at p.10) According to Defendant Watson, the outdoor radio system was repeatedly repaired, but was discontinued after the system continued to malfunction. (#42-1 at p.5) Defendant Watson also testified that the system had become a nuisance due to the poor reception and outdated speakers. (*Id.* at pp.5-6)

It is also undisputed that the VSM prison library receives a daily subscription to the *Arkansas Democrat-Gazette*. (*Id.* at p.6) At all times relevant to this lawsuit, inmates assigned to punitive isolation were given notice that their 48-hour relief period was about to begin so that they could request copies of the newspaper from the prison library. (*Id.*) In addition, the mailroom was notified when an inmate began his 48-hour relief so that inmates who had subscriptions to approved newspapers and magazines could receive the two most current copies. (*Id.*)

C.  Sovereign Immunity

Mr. Dunahue's claims for money damages from the Defendants in their official capacities are barred by sovereign immunity. A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Official-capacity claims against the Defendants must be dismissed.

D.  Qualified Immunity

Qualified immunity shields Defendants from liability on Mr. Dunahue's individual-capacity claims against them for money damages. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments" and "protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S.Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011)). It shields the Defendants "unless [their] conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Shekleton v. Eichenberger*, 677 F.3d 361, 365 (8th Cir. 2012) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)).

Defendants attach excerpts from Mr. Dunahue's deposition testimony to their motion. (#42-7) According to Mr. Dunahue's testimony, he did not submit any newspaper requests to either Defendant Andrews or Malone. (#42-7 at p.15) It is unclear to the Court, therefore, how these Defendants could be held liable for any of Mr. Dunahue's alleged first amendment claims. *Clemmons v. Armontrout*, 477 F.3d 962, 967

(8th Cir. 2007)("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.")

Defendants do not dispute that Mr. Dunahue submitted newspaper requests to Officer Felicia Piggee (not a party to this lawsuit), Defendant Kelley, and Defendant Watson. Although Defendants fail to offer any reason why Defendants Kelley or Watson denied the requests, Mr. Dunahue's claims still fail as a matter of law.

"Prisoners have a first amendment right to receive published materials, subject to reasonable limitations. But that right does not create an affirmative duty on prisons to provide news publications to inmates." *Collins v. Burl*, 2011 WL 2457532 (E.D. Ark. June 17, 2011) (citing *Pell v. Procunier,* 417 U.S. 817, 822 (1974)).

Here, it is undisputed that Mr. Dunahue had the opportunity to subscribe and receive an approved newspaper during 48-hour relief periods. Although Mr. Dunahue disputes that he ever had the funds to subscribe to a newspaper,[1] during his deposition, he specifically testified that, if he had purchased a subscription to the *Arkansas Democrat-Gazette*, he would have been provided a newspaper. (#42-7 at p.13)

In addition to complaining about having no access to written news materials, Mr. Dunahue also complains that he was not provided access to the television or radio during his 48-hour relief periods. Even if this is true, he cannot prevail because there is no clearly established constitutional right to a television or radio. See *e.g., Hofland v.*

---

[1] Defendants attach to their motion, Mr. Dunahue's commissary receipts from February 2012, through November 2016, indicating that he made many commissary purchases during the time period at issue. (#42-6)

5

*Thompson*, No. 9-174-B-W, 2009 WL 3517586, at *3 (D. Me. Oct. 29, 2009) (recommended decision) (there is "serious question" as to whether or not an inmate possesses a first amendment right to view his desired television news programming); *Mitchell v. Caruso,* No. 1:05–CV–728, 2007 WL 603399, 7–8 (W.D. Mich. Feb. 22, 2007) (recommended decision) ("It is well established that prisoners do not have any constitutionally protected right to watch television") (citations omitted); *Hall v. Phillips*, 2005 WL 3783651, at *7-8 (W.D. Ark. 2005) (report and recommendation) (inmate's rights not violated when detention center did not furnish books, newspapers, magazines, radio, or television, because inmate was not prevented from obtaining those materials for himself); *Elliott v. Brooks*, 188 F.3d 518 (10th Cir. 1999) (unpublished) (system of programming selection which favored black majority did not violate inmate's constitutional rights because "[t]here is no constitutional right to watch television"); *Manley v. Fordice*, 945 F. Supp. 132, 137 (S.D. Miss. 1996) ("No court has recognized a federal constitutional right to the usage of radio and television by inmates"). As a result, Defendants Kelly and Watson are entitled to qualified immunity.

    D.    Requests for Injunctive Relief

Defendants also argue that Mr. Dunahue's requests for injunctive relief are now moot because he has been transferred from the VSM to the East Arkansas Regional Unit. (#28) The Court agrees, in part. Several of Mr. Dunahue's requests for injunctive relief relate solely to his assignment to the VSM or to punitive isolation at the VSM. Because he is no longer subject to those conditions, Mr. Dunahue's requests relating to the radio system at the VSM should be denied, as moot.

Mr. Dunahue also requests, however, that the Court order: "[D]efendants to cease and desist denying [him] means to watch news, hear news, and read news"; and allow him to buy and possess a commissary radio, including batteries and speakers, while he is housed in isolation and while on 48-hour relief. (#6 at p.2)

As Mr. Dunahue admitted at his deposition, if he had ordered a subscription to the newspaper, he would have had access to that newspaper during his 48-hour relief periods. In addition, the Court is not aware of any constitutional right to use either a television or radio. Therefore, the Court cannot conclude that the Defendants have denied Mr. Dunahue access to the news in violation of his first amendment rights; nor can the Court provide Mr. Dunahue the injunctive relief that he seeks.

## IV. Conclusion

The Court recommends that the Defendants' motion for summary judgment (#42) be GRANTED.[2] Mr. Dunahue's claims should be DISMISSED, with prejudice.

DATED this 18th day of July, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] In their motion, Defendants also argue that, because Mr. Dunahue did not suffer any physical injury, he is not entitled to compensatory damages. While that is an accurate statement of the law, the Court has determined that the Defendants are entitled to qualified immunity on Mr. Dunahue's claims for money damages against them in their individual capacity. As a result, it is not necessary that the Court address that argument in this Recommendation.